PERU PLOW & WHEEL CO., PLAINTIFF IN ERROR,
v. D. M. BENEDICT, DEFENDANT IN ERROR.

1. **Attachment:** AFFIDAVIT. The causes set forth in the affidavit for an attachment, *Held*, Sufficient *prima facie* to authorize the issuing of an attachment.

2. ————: GROUND OF ATTACHMENT. Where none of the causes for an attachment are shown to exist, the mere inability of a debtor to pay his debts is not ground for an attachment.

3. ————: EVIDENCE. On the evidence presented, *Held*, That an order discharging the attachment was not erroneous.

ERROR to the district court for Hitchcock county. Tried below before COCHRAN, J.

*George E. Banks*, for plaintiff in error.

*W. S. Morlan*, for defendant in error.

MAXWELL, J.

The plaintiff began an action by attachment against the defendant. The defendant filed a motion to discharge the attachment upon two grounds, viz:: Because the affidavit was insufficient; and second, because the allegations therein were untrue.

The grounds of the attachment, as set forth in the affidavit to obtain the same, are, "That defendant is about to dispose of his property, with intent to defraud his creditors. Is about to sell, convey, and dispose of his property, with the fraudulent intent to cheat and defraud his creditors. Has disposed and assigned his property, with intent to defraud his creditors. Has sold and conveyed and disposed of his property, with the fraudulent intent to cheat and defraud his creditors, and to hinder and delay them in the collection of their debts. Has rights in action

and property which he conceals. Fraudulently contracted the debt upon which this action is brought."

The grounds set forth in the affidavit are sufficient, if true, to authorize the issuing of an attachment.

The defendant, however, filed an affidavit in support of the motion to discharge the attachment, denying all the causes of attachment, and setting forth the facts as he claims them to be, as follows: "I am defendant in the above entitled action; I am a married man, with a family, consisting of a wife and seven children; I reside in Culbertson, Hitchcock county, Nebraska; have resided in said county and have been engaged in the hardware and agricultural implement business for more than three years last past. On the evening of October 31, 1887, I left Culbertson about 4 o'clock, intending to go to Fairbury, stop at Hastings on the way part of the first day of November, and go from there to Fairbury, and possibly to Lincoln, and not to be absent more than four days. On leaving Culbertson, I left George W. Walker in charge of the store and store building of that place. I left Fred Rockhold in charge of my store and store building at Palisade. At the time I left Culbertson for the eastern part of the state, my sole and only purpose for so doing was to attend to business I had with various parties, and borrow money on some land I had in Jefferson county, and I had no intention of, in any manner, disposing of my property or any part thereof, or to incumber the same in any manner, except to mortgage some land I had in Jefferson county. Owing to misfortune and accident in missing the train, I did not return as soon as I intended, not getting back until noon of November 5, 1887. I had not been absent from said county for a single day for more than a month previous to said 31st day of October, except two days about the middle of October, when I was away in Hayes county, this state, and I have remained in said county continuously ever since my arrival on my return

about noon of November 5, 1887, except being out of the county possibly a day or two on business. I left the county of Hitchcock on the 31st of October, 1887, for the purpose already stated, and with no intention to avoid the service of summons or summonses. I have never so concealed myself that a summons could not be served upon me, and have never, in any manner, tried to avoid the service of summons. I have never attempted or been about to remove my property, or any part thereof, out of the jurisdiction of the court, with intent to defraud my creditors, or any of them. I have never attempted, or been about to convert my property, or any part thereof, into money for the purpose of placing it beyond the reach of my creditors, or any of them. I have never assigned, removed, or disposed, or been about to dispose of my property, or any part thereof, with intent to defraud my creditors. I have in no manner tried to conceal my property, or any part thereof, from my creditors, and have not fraudulently contracted the debt sued upon in plaintiff's petition, or any part thereof, and I have not knowingly been guilty of any fraud, directly or indirectly, upon my creditors, or any of them.

"On the 31st day of October, 1887, and up to ten o'clock of the 5th day of November, 1887, I had no intention to conceal, or in any manner dispose of or encumber, my property, or any part thereof, except in the ordinary course of trade, other than the mortgaging of the said land in Jefferson county. About ten o'clock of the 5th day of November, 1887, I met on the train at Oxford, in this state, W. B. Sheldon and C. B. Bogan; they informed me that my stock of goods at Culbertson had been attached, and that they had not had attachments issued for their claims, Mr. Sheldon representing Lee, Fried & Co., of Omaha, and Mr. Bogan representing Lininger & Metcalf Co., of Omaha, they saying that they did not know of any grounds of attachment, and as the property which I

owned had been levied upon under writs of attachment, and would probably be greatly sacrificed, that they very much desired that I would give them a mortgage on my stock of goods at Culbertson, to secure what I owed their respective houses.   At their earnest request and solicitation, I agreed to give them a mortgage on the stock of goods at Culbertson, one to Lee, Fried & Co. for the sum of $1,617.76, and one to Lininger & Metcalf Co. for the sum of $268.50, and to assign to them my book accounts and what notes I had as collateral security to pay my indebtedness to them.

"On arriving at McCook, that day, I met George W. Walker, whom I had left in charge of my store at Culbertson, who informed me that all my property had been attached, and that just before the attachment one John M. Hench, of the law firm of House & Hench, had told him that he was going to attach the goods and take all my property, and that the said Walker, desiring to secure what was coming to him as wages as clerk and tinner in my store at Culbertson, had taken from the store building and removed to another room and place in the town, property of the value of $252, and that all the property that I had left in Culbertson subject to levy of attachment had been attached, except what he took away.   He asked me to execute to him a bill of sale for the $252 worth of property.   Knowing that I was in debt to him about the amount claimed, I gave him a bill of sale for the same, as requested.

"On arriving at Culbertson, late in the afternoon, I learned of the taking out of the goods from the store at Palisade, as set forth in the affidavit of Fred Rockhold and James Redding.   I know of no goods taken out of the stores I owned at Culbertson or Palisade, except in the ordinary course of trade, other than that set forth in the affidavits of Fred Rockhold, George W. Walker, and James Redding, and believe that said goods were all that

were taken from said stores, except in the ordinary course of business. Said Fred Rockhold, George W. Walker, and James Redding took said goods from said stores without my knowledge or consent, and without any instructions from me to do so. I believe I owed them almost or quite the amount they claimed, and if my property is to be sacrificed and any of my creditors shall lose anything, I do not desire it to be one who has worked for me and to whom I owed wages for labor.

"From the 31st day of October, 1887, up to the present time, I have in no manner disposed of or encumbered any of my property, or secreted the same, or concealed the same, or any part thereof, or directed the same to be done, except as set forth in the affidavits of Hugh W. Cole, H. H. Cherry, Fred Rockhold, James Redding, C. B. Bogan, and George W. Walker, and in addition thereto a mortgage of $500, executed on the 9th day of November, 1887, to my uncle, Alexander Benedict, on a lot and house in Hayes Center, Nebraska, and 160 acres of land in Hitchcock county, Nebraska; and a mortgage to the Keokuk Stove Works, on said 9th day of November, 1887, for the sum of $1,029.50, on my land in Jefferson county, Nebraska, and judgment confessed. The debts due and confessed of judgment in each and every case being since the commencement of the above entitled action and the levy of the writ of attachment on the above entitled action; that each and all of said mortgages, securities, and transfers of property were made for the payment and securing of honest, *bona fide* debts, and with no intention of secreting the same or converting the same into money, or in any manner place the same beyond the reach of my creditors, or in any manner defraud my creditors, or any of them. I have in no manner tried to avoid the payment of an honest debt, but have always intended and still intend to pay all my debts, and in no manner to defraud my creditors or any of them."

The defendant also filed a supplemental affidavit, in which he set out, in detail, his assets and liabilities. There are also a large number of affidavits in support of and against the attachment. But the decided preponderance of the testimony shows that none of the grounds stated in the affidavit existed.

Mere insolvency or inability of the debtor to pay his debts is not alone cause for an attachment, in this state. To authorize an attachment, at least one of the grounds provided in the statute must exist.

The most that can be said is, defendant had been conducting a somewhat extensive business for the amount of his capital. It is possible, too, that the business was intrusted too much to the care of others. In other words, that the defendant did not conduct it under his own care and supervision; but the testimony fails to disclose any intent to defraud on his part. The motion to discharge the attachment, therefore, was rightly sustained. It is apparent, however, that at least one of the clerks employed by the defendant had, for several days prior to the levying of the attachments, endeavored to create the impression that the defendant was about to fail in business, and that attachments were about to be levied on his property. The course pursued by this clerk, who apparently had the confidence of the defendant, and was supposed to have knowledge of the condition of his affairs, seems to have been the sole cause of the issuing and levying of the attachments upon the defendant's property. We do not care to enter into a discussion of the facts as to the conduct of such employe, but it seems probable from the testimony that, had the defendant exercised due supervision and watchfulness over his business, he could have detected and prevented the attempt to injure his standing as a business man. He is not free from blame, therefore, for the attachments, but there was no adequate cause for issuing the same.

The judgment of the district court is right, and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.